Stephen G. Frye (CSBN 196728)
LAW OFFICE OF STEPHEN G. FRYE
205 South Broadway, Suite 705
Los Angeles, California 90012
Telephone: 213-621-1600
Fax:  213-621-1616
Email:  sgf@sgfryelaw.com

Attorney for Defendant
KELVIN MELGAR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>     vs.<br><br>KELVIN MELGAR,<br><br>Defendant. | CR 09-466-DSF<br><br>NOTICE OF MOTION AND MOTION OF DEFENDANT KELVIN MELGAR TO DISMISS THE INDICTMENT BASED ON GOVERNMENT ABUSE OF THE GRAND JURY PROCESS; EXHIBITS A-E; [PROPOSED] ORDER<br><br>REDACTED<br><br>ORIGINAL FILED UNDER SEAL<br><br>**DATE:  January 16, 2013**<br>**TIME:  2:30 p.m.**<br>**PLACE: Courtroom 890**<br>          **U.S. District Court**<br>          **255 E. Temple Street**<br>          **Los Angeles, CA 90012** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES

OF AMERICA AND ITS ATTORNEYS;

    PLEASE TAKE NOTICE that on January 10, 2013, at 2:30 p.m.,

or as soon thereafter as counsel may be heard, in Courtroom 890,

1  defendant Kelvin Melgar, by and through his counsel of record,

2  Stephen G. Frye, will bring for hearing the following motion:

3  **MOTION**

4  Defendant Kelvin Melgar moves the Court for an order

5  dismissing the Indictment, pursuant to the United States

6  Constitution and the Court's general supervisory authority.  The

7  motion is based on the government's abuse of the grand jury

8  process, including the failure to disclose substantial

9  exculpatory evidence to the grand jury, presentation of false

10  and/or misleading grand jury testimony, and failure to produce

11  sufficient evidence to support an indictment on several of the

12  allegations.  This Motion is further based upon all of the files

13  and pleadings in this case, the attached Memorandum of Points and

14  Authorities, exhibits, and such other and further evidence as may

15  be adduced at the hearing of this Motion.

16  Dated:  _November 19, 2012    Respectfully submitted,

17

18

19

20  _____/s/_____
    Stephen G. Frye
21  Counsel for Kelvin Melgar

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTS**

**A.  The Indictment.**

In 2009, a federal grand jury in the Central District of California returned an indictment charging Kelvin Melgar ("Mr. Melgar") along with the other defendants in this case, with participating in the activities of Mara Salvatrucha ("MS-13"), which the government alleges is a criminal enterprise, in violation of 18 U.S.C. § 1962.  Count 1 specifically charges Mr. Melgar and others with participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962 (d).  Count 15 charges Mr. Melgar and others with conspiracy to commit a violent crime in aid of racketeering, in violation of 18 U.S.C. § 1959.

Count 1 alleges that Mr. Melgar participated in several overt acts in furtherance of the racketeering conspiracy.  Overt Act 1 alleges that Mr. Melgar committed an assault and robbery on August 8, 1995.  Overt Act 64 alleges that, on December 20, 2003, Mr. Melgar possessed crack cocaine in his vehicle.  Overt Act 91 alleges that co-defendant Pedro Lopez, on January 27, 2006, asked an FBI confidential informant ("CI"), to drive Mr. Lopez to collect an extortion payment on behalf of Mr. Melgar.  Overt Act 121 alleges that, on July 31, 2006, Mr. Melgar received money from co-defendant Carlos Cuentas to send to an imprisoned gang member in El Salvador.

Overt Acts 110-111, 116-117, 127-128, 137, and 143-145 allege that Mr. Melgar distributed methamphetamine to a CI,

respectively, on May 17, 2006; June 8, 2006; August 29, 2006; December 12, 2006; and January 24, 2007.  Overt Act 146 alleges that, on February 2, 2007, co-defendant Yanira Escalante collected a drug debt on behalf of Mr. Melgar.

Racketeering Act 18 of Count 1 alleges that Mr. Melgar, along with co-defendants Pedro Lopez, Carlos Cuentas, Fernando Morales, and Eric Salazar participated in a conspiracy to murder LAPD Detective Frank Flores ("Det. Flores").  Overt Acts 138-141 of Count 1 set forth the specific acts allegedly committed by these individuals in furtherance of the alleged plot.  Count 15 of the Indictment charges Mr. Melgar, along with co-defendants Lopez, Cuentas, Morales, and Salazar with participating in the alleged conspiracy to murder Det. Flores in violation of 18 U.S.C. § 1959.

**B.  Evidence Presented to the Grand Jury.**

Only two witnesses testified at the grand jury:  Det. Flores and FBI Special Agent Jonathan Bauman ("Agent Bauman").  Det. Flores testified on April 22, 2009, April 29, 2009, and May 6, 2009.  A copy of Det. Flores' grand jury testimony over these three days is attached hereto as Exhibit A.  Agent Bauman testified on April 29 and May 6, 2009.  His testimony is attached hereto as Exhibit B.[1]  The prosecutor informed the grand jury

---

[1] Pursuant to the Court's Order of December 26, 2012, denying the applications of Mr. Melgar and the government to seal the original motion to dismiss and the government's opposition, Mr. Melgar has redacted only the portions of the motion related to the grand jury testimony of Agent Bauman and Detective Flores. Exhibit A, the testimony of Detective Flores, which was produced to the defense in redacted form, and Exhibit B, the unredacted

-4-

1  that the allegations in the indictment had to be supported by
2  probable cause, which evidence the government would present.
3  (See, e.g., Ex. A, at bate stamped p. 19319, lines 18-20).
4       1.  Count 1 Overt Acts.
5       Detective Flores testified regarding the history of MS-13
6  and the various cliques in Los Angeles.  He testified mostly in
7  general terms regarding Mr. Melgar.  (See Ex. A, pp. 19392-98).
8  With regard to the allegations in Overt Act 64 -- Mr. Melgar's
9  alleged possession of crack cocaine on December 20, 2003 -- Det.
10 Flores testified that



16                                      In fact, Mr. Melgar was
17 never arrested during the 2003 incident.  The December 20, 2003,
18 Arrest Report identifies Mr. Melgar only as a witness.  A copy of
19 the arrest report is attached hereto as Exhibit C.
20
21      With regard to Overt Act 91, Det. Flores only testified that

28  transcript of Agent Bauman's grand jury testimony likewise are
produced under seal.

-5-

Neither Det. Flores nor Agent Bauman provided any testimony regarding the specific methamphetamine distribution transactions alleged in Overt Acts 110-111, 116-117, 127-128, 137, and 143-145.  The entirety of evidence produced to the grand jury regarding these alleged transactions apparently was Det. Flores' testimony that

Neither Det. Flores nor Agents Bauman apparently provided any evidence whatsoever, even vague testimony, regarding Overt Acts 1, 121, and 146.

2.  Count 1 Racketeering Act 18; Count 15.

Count 1 Overt Acts 138-141, Count 1 Racketeering Act 18, and Count 15 all relate to the alleged plot to murder Det. Flores. The entirety of these charges is built around two phone calls between Mr. Melgar and Mr. Lopez on December 21 and 23, 2006, and various statements provided to law enforcement by CI Arturo Larios.  FBI Special Agent Bauman testified at the grand jury regarding this allegation.

On January 9, 2007, an extremely inebriated Larios was arrested by the LAPD Hollywood Division for violating a gang injunction.  He was then interviewed by Det. Flores while still drunk and/or high.  (See Declaration of Counsel, attached hereto as Exhibit D, at ¶¶ 3-4).  Agent Bauman's grand jury testimony

selectively summarized portions of Larios' January 9, 2007, post
arrest statement to support Count 15 of the indictment.   Agent
Bauman ignored portions of the Larios' statement that were
inconsistent with the facts he presented to the grand jury, and
utterly failed to disclose inconsistent subsequent testimony
given by Larios while sober and under oath.



     The remainder of Agent Bauman's testimony related to various
statements made by Larios, primarily those following his arrest
on January 9, 2007.   A copy of the transcript of Larios' January
9, 2007, post arrest statement is attached hereto as Exhibit E.
Agent Bauman testified that

                                            Larios then said that, after
he was released from jail, he went back to his neighborhood in
Hollywood where Mr. Melgar reminded him of what he needed to do,

1  which Larios took to mean the murder of Det. Flores.   (Id. at p.

2  20502, lines 1-11; see also Ex. E at pp. 30-31, 54).

3      Agent Bauman then testified that ███████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ██████████ Larios 302 dated May 23, 2007, attached hereto

8  as Exhibit F, at p. 6).   Agent Bauman also testified that

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ██████████ but see Ex. E, at pp. 33-39 (Larios claimed that he

14 was shown guns by teenagers he knew as "Cartoon" and either

15 "Tiger" or "Caracatura")).   Agent Bauman also testified that

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████

19     Exhibit F, at p. 6).

20     Unsurprisingly, given his advanced state of inebriation,

21 other portions of Larios' January 9, 2007, statement are totally

22 inconsistent with the portions related to the grand jury by Agent

23 Bauman.   For example, Larios denied ever discussing the matter

24 with Mr. Lopez over the phone.   (Ex. E, at p. 17).   After

25 informing Det. Flores that he was approached by Mr. Melgar after

26 Larios was released from jail, Larios immediately informed Det.

27 Flores that Mr. Melgar "has nothing to do with that."   (Id. at p.

28 18).   At another point, Larios claimed that Mr. Melgar, not Juan

LNU, had been driving Larios around Hollywood for one week in an apparent attempt to locate Det. Flores and determine his movements (id. at pp. 126-28, 157), even though bank records, and Mr. Melgar's wiretapped phone calls, demonstrate that Mr. Melgar was in staying in Delano, California during this time.  (See Declaration of Counsel, attached hereto as Exhibit D, at ¶ 5). Larios stated that Mr. Cuentas and Mr. Morales also rode with Larios while looking for Det. Flores.  (Ex. E, at pp. 115-16).

In his grand jury testimony, Agent Bauman acknowledged that █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ In fact the "case" was the state court prosecution of co-defendant Pedro Lopez.  Mr. Lopez was actually tried twice for the alleged murder of Lionel Guajardo, the same crime alleged in Counts 7 and 8 of this Indictment.

On April 6, 2009, approximately one month before Agent Bauman testified at the grand jury, Larios testified under oath at the second trial of Mr. Lopez.  A copy of Larios' testimony from the second Lopez trial is attached hereto as Exhibit G. When asked about his identification of Mr. Melgar during his January 9, 2007, post arrest statement, Larios testified that he identified Mr. Melgar, but "it has nothing to do with this case." (Ex. G, at p. 1109, lines 25-28).  A short time later, Larios reiterated that Mr. Melgar "has nothing to do with this case." (Id. at p. 1110, lines 3-6).  Later in his testimony, Larios stated that he attempted to tell Mr. Melgar about the alleged plot, but then "told him he has nothing to do with this problem.

1  So I didn't tell him anymore." (Id. at p. 1122, lines 16-23).

2  Finally, and for the fourth time, the following day, Larios again

3  insisted under oath that Mr. Melgar had nothing to do with this

4  case.  (Id. at p. 1137, lines 3-7).

5                              II.

6                           ARGUMENT

7  **A.    The Court Must Dismiss Counts 1 and 15 of the Indictment**

8  **Against Mr. Melgar Pursuant to the Consitution and the Court's**

9  **Supervisory Powers Because of the Government's Abuse of the Grand**

10 **Jury Process in this Case.**

11      1.   Applicable Law.

12      The Fifth Amendment to the Constitution protects citizens

13 from being charged with serious crimes "unless on a presentment

14 or indictment of a Grand Jury."  The historic functions of the

15 grand jury therefore "include both the determination whether

16 there is probable cause to believe a crime has been committed and

17 the protection of citizens against unfounded criminal

18 prosecutions."  United States v. Calandra, 443 U.S. 338, 343

19 (1974).

20      Federal courts derive the authority to dismiss indictments

21 from two sources.  "First, a court may dismiss an indictment if

22 it perceives constitutional error that interferes with the grand

23 jury's independence and the integrity of the grand jury

24 proceeding."  United States v. Isgro, 974 F.2d 1091, 1094 (9th

25 Cir. 1992).  "Constitutional error is found where the 'structural

26 protections of the grand jury have been so compromised as to

27 render the proceedings fundamentally unfair, allowing the

28

presumption of prejudice' to the defendant." <u>United States v.</u>
<u>Larrazolo</u>, 869 F.2d 1354, 1357-58 (9th Cir. 1989).
Constitutional error may also be found "if [the] defendant can
show a history of prosecutorial misconduct that is so systematic
and pervasive that it affects the fundamental fairness of the
proceeding or if the independence of the grand jury is
substantially infringed." <u>Id.</u> at 1358.

Second, a district court may dismiss an indictment pursuant
to its inherent supervisory powers. <u>Isgro</u>, 974 F.2d at 1094.
Before it may invoke this power, however, a court must first find
that the misconduct actually prejudiced the defendant. <u>Bank of</u>
<u>Nova Scotia v. United States</u>, 487 U.S. 250, 256 (1988). For
errors brought to the district court's attention prior to the
conclusion of the trial, dismissal is the remedy "if it is
established that the violations substantially influenced the
grand jury's decision to indict, or if there is grave doubt as to
whether it had such effect." <u>Id.</u>

2. <u>The Court Should Dismiss the Indictment Because the</u>
<u>Government's Constitutional Errors Interfered both with</u>
<u>the Grand Jury's Independence and with the Integrity of</u>
<u>the Grand Jury Proceeding</u>.

In presenting the case against Mr. Melgar, the government
committed several constitutional errors. First, and most
egregiously, the government presented false testimony to the
grand jury related to Overt Act 64. Det. Flores testified that
███████████████████████████████████████████████████████
████████████████████████████  The arrest report, however, unequivocally

1 identified Mr. Melgar only as a witness.  He was never arrested
2 on this charge.
3     Second, and somewhat less egregiously, the government
4 apparently presented no evidence whatsoever with regard to Overt
5 Acts 1, 121, and 146.  "[N]either the Fifth Amendment nor any
6 other constitutional provision prescribes the kind of evidence
7 upon which grand juries must act."  Costello v. United States,
8 350 U.S. 359, 362 (1956).  Thus, the government may properly
9 obtain an indictment, for example, based on evidence obtained in
10 violation of the fourth amendment, Calandra, 443 U.S. at 354-55;
11 or based on hearsay otherwise inadmissible at trial, Costello,
12 350 U.S. at 363.  At a bare minimum, however, the constitution
13 must require the government to present some form of evidence to
14 the grand jury.  Otherwise the government could simply hand the
15 grand jurors an indictment and ask them to indict.  Because the
16 government apparently presented no evidence regarding Overt Acts
17 1, 121, and 146, Count 1 must be dismissed.  At minimum, those
18 Overt Acts should be stricken from the Indictment.
19     Similarly, the government presented almost no evidence
20 regarding the specific methamphetamine distribution transactions
21 alleged in Overt Acts 110-111, 116-117, 127-128, 137, and 143-
22 145.  The entirety of evidence produced to the grand jury
23 regarding these alleged transactions appears to be Det. Flores'
24 testimony that ███████████████████████████████████████████
25 ████████████████████████████████████
26 ████████████████████████████  The paucity of testimony
27 regarding the specific methamphetamine transactions alleged in
28 Count 1 stands in marked contrast to the thorough presentation of

1 the evidence to the grand jury that previously indicted Mr.

2 Melgar in <u>United States v. Melgar</u>, CR 07-1231-RGK, some of the

3 same methamphetamine transactions alleged in Count 1.  (See

4 Defendant's Supplemental Memorandum to Dismiss Count 16 on Double

5 Jeopardy Grounds, docket entry 1157, Exhibit M).  This paucity of

6 evidence surely cannot establish probable cause to charge Mr.

7 Melgar for the specific acts alleged in Overt Acts 110-111, 116-

8 117, 127-128, 137, and 143-145.  Again, at minimum, those Overt

9 Acts should be stricken from the Indictment.

10      Finally, the Court should dismiss the allegations of Count 1

11 and Count 15 related to Mr. Melgar's alleged participation in the

12 purported plot to murder Det. Flores.  Agent Bauman never

13 mentioned that Larios was inebriated when he gave the statement

14 to Det. Flores on January 9, 2007.  Agent Bauman likewise did not

15 inform the grand jury that, only a month earlier, Larios had

16 specifically testified, while sober and under oath, on <u>four</u>

17 separate occasions, that Mr. Melgar had nothing to do with the

18 plot.

19      Generally, a prosecutor does not have a duty to present even

20 substantial exculpatory evidence to a grand jury when seeking an

21 indictment.  <u>United States v. Williams</u>, 504 U.S. 36, 52-53

22 (1992); <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir.

23 2000).  The United States Attorney's Manual does establish an

24 internal policy of the Justice Department that prosecutors ought

25 to disclose to the grand jury "substantial evidence that directly

26 negates the guilt" of the prospective defendant if the prosecutor

27

28

1  is "personally aware" of it.  See United States v. Navarro, 608

2  F.3d 529, 537 (9th Cir. 2010).

3      In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992),

4  the government's star witness testified at the grand jury that he

5  and the defendants had participated in various financial crimes.

6  In his own earlier criminal trial, however, the witness had

7  denied that he and the defendants had participated in any of the

8  alleged transactions.  The district court dismissed the

9  indictment because the government failed to disclose these facts

10  to the grand jury.  Citing Williams, however, the Ninth Circuit

11  reversed, holding that the government was not required to present

12  the exculpatory evidence to the grand jury.  Id. at 1096.

13      In this case, unlike Isgro, the government's star witness

14  did not change his story to implicate Mr. Melgar after previously

15  denying Mr. Melgar had anything to do with the alleged murder

16  plot.  Rather, in this case, Larios initially implicated Mr.

17  Melgar in an interview in which he was extremely inebriated.

18  Later, and within a few weeks of Agent Bauman's testimony at the

19  grand jury, Larios testified, sober and under oath, that Mr.

20  Melgar had nothing to do with the alleged plot.  Mr. Melgar

21  submits that, under these circumstances, it was a constitutional

22  violation not to inform the grand jury of the later exculpatory

23  testimony.  The Court therefore should dismiss the allegations

24  regarding Mr. Melgar's participation in the alleged murder plot.

25

26

27

28

3. The Court Should Dismiss the Indictment Pursuant to its Supervisory Powers Because the Government's Conduct Substantially Influenced the Grand Jury's Decision to Indict, or there is Grave Doubt as to Whether it had such an Effect.

As noted above, a district court may dismiss an indictment pursuant to its inherent supervisory powers. Isgro, 974 F.2d at 1094. Before it may invoke this power, however, a court must first find that misconduct actually prejudiced the defendant. Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988).

Dismissal of the indictment with prejudice is no doubt a drastic measure. See Isgro, 974 F.2d at 1098. Accordingly, when faced with government misconduct, courts should tailor the relief appropriate under the circumstances. United States v. Morrison, 449 U.S. 361, 365 (1981). The Ninth Circuit, however, has previously upheld dismissal of an indictment pursuant to the court's supervisory powers. In United States v. Basurto, 497 F.2d 781 (9th Cir. 1974), the court held that an indictment was properly dismissed when the defendants had to stand trial on the basis of an indictment that the government knew was based in part on perjured testimony. In United States v. Samango, 607 F.2d 877 (9th Cir. 1979), the court approved a dismissal when the prosecutor gave the grand jury a transcript of misleading and highly prejudicial testimony without alerting it to the witness's credibility problems and pressured the grand jury through its foreperson to reach a decision in a very short period of time. In both cases dismissal was based on misconduct confined to the

1  grand jury proceeding and that improperly influenced the grand

2  jury's decision to return an indictment.

3      The misconduct discussed above prejudiced Mr. Melgar.  Det.

4  Flores' false testimony that ███████████████████████████████

5  ██████████████████████ obviously influenced the grand jury's

6  decision to charge Mr. Melgar with Overt Act Overt Act 64 of

7  Count 1.

8      Less explicable is how the grand jury could have indicted

9  Mr. Melgar for the specific acts alleged in Overt Acts 110-111,

10 116-117, 127-128, 137, and 143-145 of Count 1 when the only

11 evidence to support these charges was Det. Flores' vague

12 testimony that Mr. Melgar distributed methamphetamine in 2006 and

13 2007.  More inexplicable still is how the grand jury charged Mr.

14 Melgar with Overt Acts 1, 121, and 146 of Count 1 when the

15 government apparently produced no evidence whatsoever to support

16 these allegations.  Certainly Mr. Melgar suffered prejudice when

17 the grand jury charged him without being presented sufficient

18 evidence to support the charges.

19

20

21

22

23

24

25

26

27

28

III.

**CONCLUSION**

The Court should dismiss Counts 1 and 15 of the Indictment against Mr. Melgar pursuant to the constitution and the Court's supervisory powers because of the government's abuse of the grand jury process in this case.

DATED: November 19, 2012          Respectfully submitted,


By:    _____/s/_____
       STEPHEN G. FRYE
       Attorney for Defendant
       KELVIN MELGAR

-17-

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action; my business address is:  205 Sought Broadway, Suite 705, Los Angeles, California 90012

On November 19, 2012, I served NOTICE OF MOTION AND MOTION OF DEFENDANT KELVIN MELGAR TO DISMISS THE INDICTMENT BASED ON GOVERNMENT ABUSE OF THE GRAND JURY PROCESS; [PROPOSED] ORDER, by serving same on the following by electronic mail:

AUSA Garth Hire
AUSA Xochitl Arteaga
AUSA Robyn Bacon
U.S. Attorney's Office
312 North Spring St.
Los Angeles, CA 90012

DOJ Trial Attorney Kevin Rosenberg
Kevin.L.Rosenberg@usdoj.gov

All Defense Counsel

**[x ]  (FEDERAL)**      I declare that I am employed in the offices of a member of this Court at whose direction the service was made.


    Executed on November 19, 2012, at Los Angeles, California.


| | |
|---|---|
| Stephen G. Frye | /s/ |
| PRINT NAME | SIGNATURE |