ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
GARTH HIRE (Cal. Bar No. 187330)
JOANNA M. CURTIS (Cal. Bar No. 203151)
ROBYN K. BACON (Cal. Bar No. 251048)
Assistant United States Attorneys
Violent and Organized Crime Section
KEVIN L. ROSENBERG (Ohio State Bar No. 0081448)
Trial Attorney, U.S. Department of Justice
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0492/0298/4667
     Facsimile:  (213) 894-3713
     E-mail:     Garth.Hire@usdoj.gov
                 Joanna.Curtis@usdoj.gov
                 Robyn.Bacon@usdoj.gov
                 Kevin.L.Rosenberg@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 09-466-DSF-16 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT KELVIN MELGAR'S MOTION TO DISMISS INDICTMENT |
| v. | |
| JOSE ALFARO, ET AL., | [UNDER SEAL] |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its opposition to Defendant Kelvin Melgar's Motion to Dismiss the Indictment.

This opposition is based on the attached Memorandum of Points and Authorities, any associated exhibits, the files and records of this case, and such further evidence and argument as the Court may permit.

Dated: December 18, 2012          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

_____
GARTH HIRE
JOANNA M. CURTIS
ROBYN K. BACON
Assistant United States Attorneys

KEVIN L. ROSENBERG
Trial Attorney, U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Kelvin Melgar, also known as "Pain" ("Melgar"), is charged by indictment with RICO Conspiracy (Count One), in violation of Title 18, United States Code, Section 1962(d), and VICAR murder conspiracy (Count 15), in violation of Title 18, United States Code, Section 1959(a)(5).

Defendant Melgar now moves to dismiss the Indictment due to alleged grand jury abuse.  In support of his motion, defendant Melgar points to three categories of evidence presented (or not) to the grand jury which he submits warrant dismissal of the Indictment: (1) insufficient or none; (2) false; and (3) exculpatory.  Defendant Melgar further argues that the alleged mistakes amount to constitutional error, and even if they do not, the Court should exercise its supervisory powers and dismiss the Indictment.

As an initial matter, the government asserts, and defendant Melgar does not dispute, that sufficient evidence was presented to the grand jury supporting the charges against him.  The government agrees that where no or insufficient evidence was presented to the grand jury as to certain overt acts, the Court should strike them. However, as to the remainder of the charges, although the government agrees that mistakes were made in the initial presentation to the grand jury, and recognizes the attendant deficiencies in the Indictment,[1] the government submits that the mistakes do not amount

---

[1]   In light of the deficiencies in the Indictment, as to defendant Melgar and the other defendants, the government anticipates re-presenting all of the evidence to a new federal grand

1

to constitutional error.  The government further submits that defendant Melgar has failed to demonstrate prejudice, which would allow the Court to exercise its supervisory powers over the Indictment.  The Court should therefore deny defendant Melgar's Motion to Dismiss the Indictment.

**II.   FACTUAL SUMMARY**

    **A.   RICO CONSPIRACY (COUNT ONE): OVERT ACT NOS. 1, 91, 110, 121, AND 146**

The RICO Conspiracy count in the Indictment as against defendant Melgar alleges that he committed overt act numbers 1, 91, 110, 121, and 146.  These overt acts capture a range of criminal activity, from assault to extortion.  While the government believes that evidence exists to support these overt acts, the government concedes that none was presented to the grand jury.

However, the government presented sufficient evidence to the grand jury to support the RICO Conspiracy charge as to defendant Melgar.  Specifically, ███████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████
████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████.  See Exhibit A to Def. Melgar's Motion at 177: 5 – 183: 1.

---

jury and requesting a superseding indictment in or around March, 2013.  If a new grand jury returns a superseding indictment against defendant Melgar, the claims raised in his motion will be moot.

2


**B.  RICO CONSPIRACY (COUNT ONE): OVERT ACT NOS. 111, 116, 117, 127, 128, 137, 143, 144, AND 145**

The RICO Conspiracy count in the Indictment as against defendant Melgar further alleges that he committed overt act numbers 111, 116, 117, 127, 128, 137, 143, 144, and 145. These overt acts allege drug buys, drug deliveries, or agreements to deliver drugs on specific days. In support of these overt acts, the government presented the following evidence to the grand jury: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

**C.  RICO CONSPIRACY (COUNT ONE): OVERT ACT NO. 64**

The RICO Conspiracy count in the Indictment as against defendant Melgar also alleges that he committed overt act number 64: "On or about December 20, 2003, defendant Melgar possessed in his vehicle approximately 40 rocks of crack cocaine in the vicinity of 441 S. Rampart Boulevard in Los Angeles." Part of the evidence presented to the grand jury, via testimony by Los Angeles Police Department Detective Frank Flores, was as follows:



See Exhibit A to Def. Melgar's Motion at 180: 7-14. Defendant Melgar alleges that this use of the word "arrested" instead of "detained" constitutes the most flagrant incident of grand jury abuse as to him. See Def. Melgar's Motion at 12.

1    D.   VICAR MURDER CONSPIRACY (COUNT 15)
2         In addition to Count One, defendant Melgar is charged in Count
3    15 of the Indictment with conspiring to kill Detective Flores.
4    █████████████████████████████████████████████████████████████████
5    █████████████████████████████████████████████████████████████████
6    ██████████████████████████.
7         On December 20, 2006, co-defendant Pedro Lopez ("Lopez") was
8    held to answer on murder charges at a preliminary hearing in the Los
9    Angeles Superior Court.  Detective Flores testified at the
10   preliminary hearing as a MS-13 gang expert. ████████████████
11   █████████████████████████████████████████████████████████████████
12   █████████████████████████████████████████████████████████████████
13   █████████████████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████     See
15   Exhibit B to Def.' Melgar's Motion at 96: 15 – 100: 17.
16        On April 6, 2009, Larios testified at Lopez's murder trial
17   about the conspiracy to kill Detective Flores.  Defendant Melgar
18   points to four different exchanges in Larios' trial testimony as
19   exculpatory.  See Def. Melgar's Motion at 10.  However, in so doing,
20   defendant Melgar overstates the significance of the exchanges, which
21   are ambiguous, at best, in the full context of Larios' testimony.
22   Because Larios was testifying at Lopez's murder trial, for which
23   Lopez was the only defendant, neither the prosecutor nor the defense
24   counsel clarified many of Larios' statements regarding defendant
25   Melgar.  For example, on April 7, 2009, Larios testified that he was
26   shown a photograph of defendant Melgar and stated:  "Yes.  But he
27   has nothing to do with that case.  He would just ask me questions
28   whether I knew them."  See Exhibit G to Def. Melgar's Motion at

4

1136-37. This question was one of a series of questions posed to Larios about whether he previously identified other MS-13 gang members, not whether defendant Melgar had anything to do with the conspiracy to kill Detective Flores. Id. Similarly, when asked if any members of the Hollywood clique, other than Lopez, ordered him to kill Detective Flores, Larios said: "no." Id. At that state in the proceedings, however, Larios was not asked whether he had discussed the order with any other MS-13 members.

On May 6, 2009, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ See Exhibit B to Def. Melgar's Motion at 100: 16-17. ████████████████████████████████████████████████████████████████████████████████████████████████ See Exhibit B to Def. Melgar's Motion at 104: 6-13.

### III. ARGUMENT

"Federal courts draw their power to dismiss indictments from two sources. First, a court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's

---

[2] ████████████████████████████████████████████████d[███]ugh Larios' trial testimony occurred on April 6 and 7, 2009, it is highly unlikely that the trial transcripts had been prepared. In fact, each volume contains a date stamp on its face page dated June 25, 2009, the likely date of creation. Thus, it is probable that the Lopez trial transcripts did not exist at or about the time the evidence was presented to the grand jury.

independence and the integrity of the grand jury proceeding." United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992). "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Id.

Second, a district court may draw on its supervisory powers to dismiss an indictment. Id. "Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]-a dismissal is not warranted." Id. See also United States v. Woodley, 9 F.3d 774, 777 (9th Cir. 1993) ("A court may use its supervisory powers to dismiss an indictment for three reasons: (1) to remedy the violation of recognized rights, (2) to deter illegal conduct, and (3) to preserve judicial integrity…").

Finally, dismissal of an indictment, particularly with prejudice, is a drastic measure. Id. See also Bank of Nova Scotia v. United States, 487 U.S. 250 (1988) (holding that a district court cannot dismiss an indictment absent a showing of prejudice to the defendant); United States v. Chanen, 549 F.2d 1306, 1313 (9th Cir. 1977) (stating that a dismissal of an indictment with prejudice is the most severe sanction possible and requires a "clear basis in fact and law" for doing so).

Here, defendant Melgar provides no factual or legal support for his conclusions that the testimony provided to the grand jury amounted to constitutional error. Nor does he provide any evidence

6

that he was prejudiced. Therefore, defendant Melgar's motion should be denied.

### A. ALTHOUGH THE GOVERNMENT AGREES THAT OVERT ACT NOS. 1, 91, 110, 111, 116, 117, 121, 127, 128, 137, 143, 144, 145, AND 146 SHOULD BE STRICKEN FROM THE INDICTMENT, DISMISSAL OF THE INDICTMENT IS NOT WARRANTED.

As the record reflects, the government concedes that the grand jury heard insufficient, and in some cases, no evidence to support the following overt acts in the RICO Conspiracy (Count One): 1, 91, 110, 111, 116, 117, 121, 127, 128, 137, 143, 144, 145, and 146. Accordingly, to cure any deficiencies as to defendant Melgar, the government respectfully requests that the Court strike all of the aforementioned overt acts from the Indictment.

If the Court strikes the identified overt acts, defendant Melgar cannot maintain his request for dismissal of the Indictment, because the RICO and VICAR conspiracy charges stand, independent of the overt acts. See Salinas v. United States, 522 U.S. 52 (1997) (the government is not required to include overt acts in a RICO conspiracy charge). Moreover, the government presented sufficient evidence to the grand jury to support the charges (which defendant Melgar does not and cannot dispute) and the Indictment contains the elements of the charged offenses in adequate detail to inform him of the charges. See United States v. Buckley, 689 F.2d 893, 896 (1982). However, should defendant Melgar choose to maintain his request for dismissal of the Indictment, as opposed to the striking of these overt acts, he must first identify constitutional error or prejudice. Defendant Melgar has failed to articulate either in his motion and thus, his motion must be denied.

### B. THE RICO CONSPIRACY (COUNT ONE) OVERT ACT NO. 64 IS SUPPORTED BY COMPETENT EVIDENCE; THEREFORE, THE INDICTMENT SHOULD NOT BE DISMISSED.

Defendant Melgar contends that because Detective Flores used the word "arrested" instead of "detained" while testifying about the 40 rocks of crack cocaine found in defendant Melgar's car, Detective Flores provided false testimony which amounted to constitutional error. However, defendant Melgar has failed to demonstrate how the inaccurate use of one word in the presentation of evidence to the grand jury was an "usurpation of the grand jury's role to determine whether the defendant should be indicted." Isgro, 974 F.2d at 1095-96. In Isgro, the Ninth Circuit concluded there was "no abrogation of constitutional rights sufficient to support the dismissal of an indictment" when the prosecutor "extracted testimony" from a witness during grand jury proceedings that was "diametrically opposed" to prior trial testimony from that witness. Id. at 1093-94. The Ninth Circuit ultimately concluded that the grand jury was not deprived of its ability to make an informed or independent decision. Id. at 1096.

The alleged constitutional violation here falls far short of the alleged misconduct at issue in Isgro. Whether the word "arrested" or "detained" was used, the effect of the statement is the same, i.e., defendant Melgar was not free to leave and 40 rocks of crack cocaine were found in his vehicle.

Defendant Melgar cannot seriously contend that the use of the word "arrested" versus "detained" affected the "fundamental fairness" of the grand jury proceeding, particularly where, as here, Detective Flores informed the grand jury that defendant Melgar was not charged with any offense. More importantly, defendant Melgar

8

1  failed to make any showing of prejudice as to how the use of the
2  word "arrested" substantially influenced the grand jury's decision
3  to indict.  See Bank of Nova Scotia, 487 U.S. at 256.  Accordingly,
4  defendant Melgar's motion should be denied.

5       C.      **THE GOVERNMENT IS NOT OBLIGATED TO PRESENT EXCULPATORY EVIDENCE TO THE GRAND JURY; THEREFORE, THE INDICTMENT**
6                 **SHOULD NOT BE DISMISSED.**

7  The Supreme Court and Ninth Circuit agree that the government
8  has no duty to present exculpatory evidence.  See United States v.
9  Williams, 504 U.S. 36 (1992) (noting that the grand jury's role is
10 to assess whether there is an adequate basis for bringing a criminal
11 charge, not determining guilt or innocence, thus the suspect has no
12 right to testify or to have exculpatory evidence presented); United
13 States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (prosecutors
14 have no duty to present exculpatory evidence, even if that evidence
15 impeaches the credibility of a witness); United States v. Larrazolo,
16 869 F.2d 1354, 1359 (9th Cir. 1989), *overruled on other grounds* by
17 Midland Asphalt Corp. v. United States, 489 U.S. 794 (1989) (the
18 prosecutor has no duty to present on all matters bearing on the
19 credibility of any witness or exculpatory evidence).  Although
20 defendant Melgar does not dispute that the government has no duty to
21 present exculpatory evidence to the grand jury, he complains that
22 the government did not present evidence of Larios' inebriation or
23 Larios' April 2009 trial testimony to the grand jury.  See Def.
24 Melgar's Motion at 14-15.  Defendant Melgar's claims are without
25 merit.
26 As noted above, [REDACTED]
27 [REDACTED]
28 [REDACTED].  While it is

9

true that Agent Bauman did not testify about Larios' state court trial testimony, the testimony was, at best, vague and ambiguous, not exculpatory. Moreover, the fact that Larios' prior testimony was not presented to the grand jury is not a basis for dismissal of the Indictment in light of the fact that there is no requirement that the grand jury be presented with exculpatory evidence. Accordingly, defendant Melgar's motion should be denied.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court strike Overt Act numbers 1, 91, 110, 111, 116, 117, 121, 127, 128, 137, 144, 145, and 146 in Count One of the Indictment, but deny defendant Melgar's Motion to Dismiss the Indictment.

Dated: December 18, 2012      Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

_____
GARTH HIRE
JOANNA M. CURTIS
ROBYN K. BACON
Assistant United States Attorneys

KEVIN L. ROSENBERG
Trial Attorney, U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA